48

## JAMES WILSON'S ADMINISTRATOR v. THOMAS CALDWELL.

Court of Common Pleas.   New Castle.   December, 1795.[1]

*Rodney's Notes.*

*Levy* for plaintiff.

Brought for half of a shallop called Mulberry by Wilson.   The question is to try whether half the shallop belonged to Wilson at the time replevin was brought.

William O'Neil, sworn.   The Mulberry was built by Ayres and Trainwell for the river business in partnership, and their accounts were settled by men for building and running her, and Trainwell was found in debt about the Summer, 1787.   Bill of sale from Isaac Ayre to James Wilson for half of the Mulberry for £60 and cargo, dated January 16, 1789.   Vessel was worth £240; cargo was worth £160, that Wilson was to have discounted with Ayres for all he could get for her more than £60.   Vessel was supposed to be in Charleston when the bill of sale was made.   Trainer was not present.   She is in possession of Mr. Combs and Tilton.   Trainer objected to settle with Ayres without being allowed for part of the charter money.   Vessel brought in by grant.   Trainer came in her to New Castle, informed sheriff that the vessel was Wilson's.   She was taken by Trainer as property of Ayres.

*Mr. Bayard* for defendant.   Motion for nonsuit.   That the action was brought for half of an indivisible chattel which his partner or one tenant in common had possession of.   Replevin will not lie by one tenant in common against another.

*Levy.*   That plaintiff brought his action to recover whole and that they were not tenants in common.   Litt.Ten. 323.   Add. 200.   No proof that one moiety of vessel was not in defendant.   Sheriff ordered to deliver one moiety, 3 Bac.Abr. 220.   One tenant in common cannot bring trover against his companion, 2 Esp. N.P. 348.

*Levy.*   No proof that defendant has any property in the vessel, therefore no tenant in common.   Replevin to try property.

---

[1] Rodney adds here, "I believe."

*Bayard.* The action should have been brought in the name of Wilson and Trainer.

And Court are of opinion that plaintiff be nonsuited. The action is not supported by the evidence. Jury called plaintiff, does not answer, therefore *non prosequitur* at bar.

## THOMAS BABB v. CALEB PERKINS.

Court of Common Pleas. New Castle. 1795.

*Rodney's Notes.*

*Levy, Bayard* [for plaintiff]. *Bedford* [for defendant].

*Bayard,* for plaintiff, was going on to open the cause. Defendant objected, and objection overruled. Offered a plot to the jury which had an addition of two lines laid down by plaintiff, with only one day's notice to defendant; defendant did attend without dissenting or assenting.

Court are of opinion that it would be irregular to admit the plot to go to the jury.

Deed, October 12, 1709, Peter Baynton to James Thomas, beginning at Stoney Creek. Survey dated 1759 read to the jury in order to prove a boundary, hickory in the line from B to Sulkey corner near the corner white oak of plaintiff's land.

Robert Coram, surveyor, to explain the plot.

Jacob Broom. Caleb Perkins and the father of Thomas Babb and other owners of the adjoining lands present when the stone line was run—at the expense of, and he believes it was a joint agreement between, all parties in order to establish the lines of their lands. There was a black oak about two perches nearer the river than the stone line, about two thirds of the line from B. The stone line was not run agreeably to the usual but real variation.

William Fotwell, seventy-one years of age, was present when Broom etc., and also when Coram ran it. Black oak is about thirty perches to southeast of Babb's corner. A hickory stands